**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LORI A. EVERSON,**

                   **Plaintiff,**               **6:11-cv-901**
                                             **(GLS)**

          **v.**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

                     **Defendant.**
_____

**APPEARANCES:**                      **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Olinsky Law Group                HOWARD D. OLINSKY, ESQ.
300 S. State Street
5th Floor, Suite 520
Syracuse, NY 13202

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN     TOMASINA DIGRIGOLI
United States Attorney             Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Mary Ann Sloan
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Lori A. Everson challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB), seeking judicial review under 42 U.S.C. § 405(g).  (*See* Compl., Dkt. No. 1.)  After reviewing the administrative record and carefully considering Everson's arguments, the court affirms the Commissioner's decision and dismisses the Complaint.

### II. Background

On May 23, 2007, Everson filed an application for DIB under the Social Security Act ("the Act"), alleging disability since May 11, 2002. (*See* Tr.[1] at 134-36.)  After her application was denied, (*see id.* at 108-10), Everson requested a hearing before an Administrative Law Judge (ALJ), which was held on December 2, 2009, (*see id.* at 37-68).  On July 7, 2010, the ALJ issued a decision denying the requested benefits, which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review.  (*See id.* at 1-3, 24-32.)

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (*See* Dkt. No. 12.)

Everson commenced the present action by filing a Complaint on August 1, 2011, seeking review of the Commissioner's determination. (*See* Compl.)  The Commissioner filed an answer and a certified copy of the administrative transcript.  (*See* Dkt. Nos. 10, 12.)  Each party, seeking judgment on the pleadings, filed a brief.  (*See* Dkt. Nos. 14, 18.)

## III.  Contentions

Everson contends that the Commissioner's decision is tainted by the application of improper legal standards and is not supported by substantial evidence.  (*See* Dkt. No.14 at 11-25.)  Specifically, Everson claims that the ALJ: (1) did not apply the proper standards for evaluating her Residual Functional Capacity (RFC); (2) failed to apply the "[p]sychiatric [r]eview [t]echnique" (PRT) in determining her mental functional limitations; (3) improperly assessed her credibility; and (4) erred in relying on a vocational expert's testimony which was based upon an incomplete hypothetical question.  (*Id.*)  The Commissioner counters that the ALJ used the appropriate legal standards and substantial evidence supports his decision.  (*See* Dkt. No. 18 at 11-22.)

## IV.  Facts

The evidence in this case is undisputed and the court adopts the
parties' factual recitations.  (*See* Dkt. No. 14 at 2-9; Dkt. No. 18 at 2-7.)

## V.  Standard of Review

The standard for reviewing the Commissioner's final decision under
42 U.S.C. § 405(g) is well established and will not be repeated here.  For
a full discussion of the standard and the five-step process used by the
Commissioner in evaluating whether a claimant is disabled under the Act,
the court refers the parties to its previous opinion in *Christiana v. Comm'r
of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2
(N.D.N.Y. Mar. 19, 2008).

## VI.  Discussion

## A.    Treating Physician Rule

Everson contends that the ALJ improperly afforded great weight to
the opinions of non-examining psychological consultant Dr. P. Kudler and
non-examining medical expert Dr. Martin Fechner, and failed to give
controlling weight to the opinion of treating physician Dr. Frank Kramer.
(*See* Dkt. No. 14 at 12-16.)  Everson also argues that the ALJ improperly
assigned no weight to treating therapist Catherine Bowne's opinion, and
failed to discuss the opinion of physical therapist Nathanial Beach.  (*See*

4

*id.* at 16-19.)  Everson claims that the ALJ's misappropriation of weight to the medical sources resulted in a flawed RFC determination.[2]  (*See id.* at 11-12.)  The Commissioner counters that the ALJ properly discounted Dr. Kramer's RFC assessment because it was inconsistent with other substantial evidence[3] in the record and it was irrelevant to the time period at issue in Everson's claim.  (*See* Dkt. No. 18 at 17.)  Further, the Commissioner argues, *inter alia*, that since therapists Bowne and Beach are unacceptable medical sources, the ALJ has the discretion to determine the weight to accord to their opinions.  (*See id.* at 17-18.)  The court agrees with the Commissioner.

Generally, an ALJ is required to give controlling weight to a treating physician's medical opinion if it is supported by acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record.  *See* 20 C.F.R. § 404.1527(c)(2); *Halloran v. Barnhart*, 362 F.3d

---

[2] A claimant's RFC "is the most [she] can still do despite [her] limitations."  20 C.F.R. § 404.1545(a)(1).  In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain.  *Id.* at § 404.1545(a)(3).  An ALJ's RFC determination must be supported by substantial evidence in the record.  *See* 42 U.S.C. § 405(g).

[3] "Substantial evidence is defined as more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept to support a conclusion."  *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

28, 32 (2d Cir. 2004).  The ALJ is required to explain the weight he gives to the opinions of a treating physician.  *See* 20 C.F.R. § 404.1527(c)(2). When an ALJ does not give a treating physician's opinion controlling weight, he must assess several factors to determine how much weight to give the opinion, including: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination by the treating physician for the conditions in question; (3) the medical evidence and explanations provided in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the qualifications of the treating physician; and (6) other relevant factors tending to support or contradict the opinion.  *See id.* § 404.1527(c)(2)-(6).  The opinion of a non-examining source can override the opinion of an examining source if it is supported by evidence in the record.  *See Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995).

Importantly, the "ultimate finding of whether a claimant is disabled and cannot work . . . [is] reserved to the Commissioner."  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999) (internal quotation marks and citation omitted).  While the ALJ considers the data that physicians provide, he draws his own conclusions as to whether those data indicate disability.

*See id.*  As such, a treating physician's disability assessment is not determinative.  *See id.*; *accord* 20 C.F.R. § 404.1527(d)(1).

Although the ALJ could have discussed the factors listed in 20 C.F.R. § 404.1527(c)(2)-(6) in more detail, this shortcoming does not amount to error because his ultimate determination is supported by substantial evidence.  Not only did Dr. Kramer's April 2008 physical RFC assessment, (*see* Tr. at 369), do little to prove that Everson was disabled on or before December 31, 2007, it departed from the thrust of other substantial evidence in the record and was properly accorded "little weight."  (*Id.* at 30.)

In his 2008 physical RFC assessment, Dr. Kramer opined that Everson could not stand or walk for more than one hour and could not sit for more than four hours in an eight hour day.  (*See id.* at 369.)  He identified Everson's "massive ventral hernia" and noted that an MRI revealed that she had arthritis and disc disease.  (*Id.*)  However, in May 2005, Dr. Kramer stated that neither Everson's ventral hernia nor her back issues prevented her from performing sedentary work.  (*See id.* at 276.)  Thus, Dr. Kramer's 2008 physical RFC assessment is not only inconsistent with his own prior statements concerning the extent of

7

Everson's injuries, but also with the opinions of Drs. Fechner, Frank
Norsky, and D. Welch.

Unlike Dr. Kramer, Dr. Fechner, following a review of the medical
evidence, noted that Everson could occasionally climb stairs and ramps,
balance, stoop, kneel, and crouch, and opined that she could sit for six
hours and stand and walk for two hours in an eight hour day.  (*See id.* at
447, 449.)  Similarly, Dr. Norsky, who conducted a physical examination in
July 2007, concluded that Everson "probably would be able to perform
physical activities that would not require excessive walking or climbing
stairs."  (*Id.* at 340.)  He also noted that she was able to get on and off the
examination table with a little help, that she could walk on her toes and
heels, and that she could change for the physical examination without any
help.  (*See id.*)  Finally, Dr. Welch noted that Everson had a full range of
motion in her lower back and was not experiencing muscle spasms in that
region.  (*See id.* at 354.)  He estimated that Everson was able to lift twenty
pounds occasionally, ten pounds frequently, and stand, walk, and sit, for
six hours in an eight hour day.  (*See id.*)

In addition to these opinions, Everson's reported daily activities
during the relevant time period support the ALJ's RFC determination.

8

(*See id.* at 174-84.)  She testified that she loaded and unloaded the dishwasher, vacuumed, swept, and mopped.  (*See id.* at 60.)  During her consultative examination with Dr. Norsky, Everson reported that she was able to do her housework without any lifting, drive a car, go grocery shopping, and use public transportation.  (*See id.* at 339.)  Everson also indicated that she is independent in activities of daily living, and that she cooks, cares for her pet, and makes phone calls.  (*See id.* at 175, 356-57.)  In May 2007, Everson told Dr. Kramer that she found aqua therapy to be "particularly helpful for her ventral hernia" and that she generally felt better and was "able to actually do her full shower."  (*Id.* at 243).

Regarding Everson's alleged mental impairments, which she claims contributed to her total disability, the ALJ cited inconsistencies in Bowne's opinions as his primary rational for according great weight to Dr. Kudler's opinion–which was consistent with the determination that Everson could perform significant work-related activities.  (*See id.* at 29-30).  In July 2009, Bowne indicated that Everson was unable to work due to her emotional state.  (*See id.* at 429.)  However, in her February 2008 mental RFC assessment, Bowne indicated that Everson had a good ability to understand, remember, and carry out complex, detailed, and simple job

instructions.  (*See id.* at 367.)  In the same assessment, Bowne noted that Everson could follow work rules, function independently, and relate to coworkers and supervisors.  (*See id.*)  Bowne offered no additional evidence tending to show that Everson's prognosis worsened—or changed in any manner—during the period from February 2008 to July 2009.  (*See id.* at 30.)  Given that Bowne is not an acceptable medical source,[4] and in light of the inconsistencies with her own prior opinions, as well as the other evidence in the record, the ALJ properly exercised his discretion and appropriately discounted Bowne's opinion in favor of Dr. Kudler's.  *See Diaz*, 59 F.3d at 313-14 (explaining that the ALJ has the discretion to determine the appropriate amount of weight to accord to the opinions of non-medical sources).

Moreover, while the ALJ could have discussed Beach's opinion in more detail, this deficiency does not render his RFC determination invalid because Beach was an unacceptable medical source and his opinions are nonetheless consistent with the ALJ's findings.  *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (citation omitted) (indicating that, while the ALJ is obligated to fully develop the record, he is not required to discuss all of the evidence submitted and a failure to do so does not indicate that

---

[4] *See* 20 C.F.R. § 404.1513(a)-(d).

the evidence was not considered).  Beach repeatedly indicated that Everson tolerated treatment without incident and that she was able to exercise intensely without experiencing a significant response in symptoms.  (*See id.* at 319, 327-32.)  At one of her final sessions, Beach noted that Everson stated, among other things, that her back was feeling better and that her hernia was not bothering her as much as it had previously.  (*See id.* at 320.)

Notwithstanding Everson's claims to the contrary, it follows that the ALJ's assignment of weight and assessment of Everson's RFC are supported by substantial evidence, and, thus, affirmed.

## B.   Psychiatric Review Technique

Everson next contends that the ALJ failed to apply the PRT when making his mental RFC determination.  (*See* Dkt. No. 14 at 19-20.) Specifically, Everson argues that the ALJ failed to provide a more detailed assessment of her mental RFC at step four than was contained in his analysis at step three.  (*See id.* at 20.)  The Commissioner counters that the ALJ properly assessed Everson's mental condition under the Social Security Regulations.  (*See* Dkt. No. 18 at 15.)  Again, the court agrees with the Commissioner.

An ALJ's determination of a claimant's mental functional limitations must reflect his application of the "special technique" set out in 20 C.F.R. § 404.1520a(c)(3), which requires the ALJ to make a specific finding regarding the claimant's functional limitation with respect to four broad functional areas: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." The mental RFC assessment used at steps four and five of the sequential evaluation process requires the ALJ to, among other things, engage in a more detailed assessment of various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in § 12.00 of the Listing of Impairments.  *See* SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996).

Here, the ALJ properly applied and documented the "special technique" in evaluating Everson's mental impairments at step three. (*See* Tr. 27-28.)   Although Everson argues otherwise, the ALJ's findings are supported both by Everson's function report, (*see id.* at 174-84), and Dr. Jeanne Shapiro's June 2007 psychiatric consultative examination, (*see id.* at 314-18).  Further, the ALJ explained that his RFC assessment, which he was required to complete in light of his finding that Everson's

12

severe mental impairment did not meet or equal a listed impairment,

"reflects the degree of limitation [that he] . . . found in the . . . mental

function analysis." *Id.* at 28.

Following his evaluation of Everson's mental impairments in the four

broad functioning areas at step three, the ALJ adequately engaged in a

more detailed assessment of Everson's mental RFC at step four.  (*See* Tr.

at 30.)  Among the criteria in paragraphs B and C in § 12.00 of the Listing

of Impairments are abnormalities in the claimant's mood, behavior,

memory, independence, ability to get along with others, concentration, and

persistence.  *See* SSR 96-8p, 1996 WL 374184, at *4.  Not only did the

ALJ assess Everson's memory, concentration, and attention directly in his

opinion, (*see* Tr. at 30), he also referenced Dr. Kudler's mental

assessment of Everson, which included detailed descriptions of Everson's

independence, ability to interact socially with others, mood, behavior, and

thoughts, (*see id.* at 30, 346-51).

Accordingly, the ALJ properly relied on substantial evidence in the

record to provide a more detailed assessment of Everson's mental

limitations at step four than that which was included in his analysis at step

three, and properly assessed Everson's mental condition pursuant to the PRT.

## C.   <u>Credibility Determination</u>

Everson contends that the ALJ failed to apply the appropriate legal standards in assessing her credibility and improperly concluded that her statements were not fully credible simply because they were inconsistent with the ALJ's own RFC finding.  (*See* Dkt. No. 14 at 20-24).  Everson alleges further that, although the ALJ identified a number of limitations which he claimed compromised her credibility, he failed to substantiate why he concluded Everson was incredible.  (*See id.* at 22.)  Finally, Everson argues that the ALJ failed to discuss certain evidence tending to establish her credibility, including her work history, medicines and side effects, and other measures she took to alleviate her pain.  (*See id.* at 23.)  The Commissioner counters that the ALJ properly considered Everson's subjective complaints and did not err by concluding that they were incredible prior to December 31, 2007.  (*See* Dkt. No. 18 at 18.)  Because the ALJ's assessment was sufficiently articulate and based on substantial evidence, the court agrees with the Commissioner.

14

The ALJ is required to evaluate a claimant's credibility and reach an independent judgment regarding subjective symptoms in light of the objective medical evidence and other evidence regarding the true extent of the alleged symptoms. *See Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir. 1984). An ALJ must consider a claimant's subjective complaints of pain in gauging her RFC. *See* 20 C.F.R. § 404.1545(a)(3). However, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability." 42 U.S.C. § 423(d)(5)(A). The Commissioner is obligated to evaluate all of a claimant's symptoms, "including pain, and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a).

Ultimately, "[t]he reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." SSR 96–7p, 1996 WL 374186, at *4 (July 2, 1996). Thus, "after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility," an ALJ may reject the claimant's subjective allegations of pain as long as he sets forth his "reasons with sufficient specificity to enable [the court] to decide whether the determination is

supported by substantial evidence." *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (internal quotation marks and citation omitted).

Here, the ALJ based his decision on specific evidence in the record—including "objective medical evidence and the claimant's testimony"—and sufficiently articulated why he determined that the objective medical findings failed to reveal that Everson's limitations rose to the level of a total disability as she alleged. (Tr. at 29.) The ALJ primarily considered the body of objective medical evidence from Drs. Fechner and Norsky, which tended to show that Everson's afflictions were not as debilitating as she averred. (*See id.* at 340, 447, 449.) In addition, the ALJ also considered Everson's testimony, which indicated that her alleged total disability was inconsistent with her reported daily activities. (*See id.* at 60, 174-84, 339.) Thus, the ALJ's credibility determination is supported by substantial evidence in the record, and is conclusive.

**D.** **Vocational Expert's Testimony**

Lastly, Everson contends that the ALJ erred in relying on a vocational expert's answers to an allegedly incomplete hypothetical question in making his determination that Everson was capable of performing work in the national economy. (*See* Dkt. No. 14 at 24-25.)

Specifically, Everson alleges that the hypothetical question was "the product of errors in RFC and in assessing credibility." (*Id.* at 24.)  The Commissioner counters, and the court agrees, that the ALJ's hypothetical question was consistent with his RFC assessment and that it reflected the abilities Everson possessed on or before December 31, 2007.  (*See* Dkt. No. 18 at 22.)

In making his ultimate disability determination, the ALJ must consider whether the claimant can do any other, less demanding work existing in the national economy.  *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c); *accord White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990).  If the ALJ's RFC assessment is supported by substantial evidence, it is appropriate for him to rely on that RFC assessment in questioning the vocational expert.  *See Mancuso v. Astrue*, 361 F. App'x 176,179 (2d Cir. 2010).  In addition to the RFC assessment, the ALJ may also rely on the claimant's age, education, past work experience, and the transferability of the claimant's skills in order to assess whether other jobs exist in the national economy which the claimant could perform.  *See* 20 C.F.R. § 404.1520(g).

In questioning the vocational expert in this case, the ALJ's hypothetical question accurately reflected his RFC assessment and credibility determination which, as discussed above, were supported by substantial evidence.  (*Compare* Tr. at 198-99, *with* Tr. at 29.)  As a result, the ALJ's reliance on the vocational expert's opinion was not misplaced. (*See id.* at 199.)

## E.    Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Everson's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

July 25, 2012
Albany, New York

Gary L. Sharpe
Gary L. Sharpe
Chief Judge
U.S. District Court

18